UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JERMAINE PEAYRE CARTER #313817    CIVIL ACTION NO. 15-cv-2591

VERSUS    JUDGE FOOTE

DISTRICT ATTORNEY CADDO PARISH, ET    MAGISTRATE JUDGE HORNSBY
AL

**REPORT AND RECOMMENDATION**

**Introduction**

A Bossier Parish jury convicted Jermaine Peayre Carter ("Petitioner") of distribution of marijuana and flight from an officer. He was sentenced to 28 years for the drug conviction and a consecutive six-month sentence for flight from an officer. The convictions and sentences were affirmed on direct appeal. State v. Carter, 78 So.3d 168 (La. App. 2d Cir. 2011), writ denied, 87 So.3d 105 (La. 2012). Petitioner next filed a post-conviction application in state court. After exhausting his state court remedies, he filed this federal petition for habeas corpus relief. For the reasons that follow, it is recommended that the petition be denied.

**Sufficiency of the Evidence**

**A. The Evidence**

Petitioner argued in his post-conviction application that the evidence was not sufficient to support his conviction for distribution of marijuana. His first federal habeas claim is a renewal of that argument. (Petitioner argued on direct appeal that the evidence

was insufficient to support the flight from an officer conviction, but his federal petition does not raise that issue.)

Gene Hillen, the Assistant Chief of Police for Benton, testified that he made a traffic stop and discovered that the female driver had remnants of marijuana in her vehicle. The woman was scared and volunteered that she could "get dope from Shreveport." Hillen agreed to allow her to try to arrange a controlled buy.

Hillen testified that the woman, referred to at trial as the CI, used a payphone at the Dixie Mart in Benton to make a call and ask someone to sell her marijuana. The CI told Hillen that someone was coming, but he did not recall if she gave him any names. Hillen backed up outside the nearby Bossier Parish Courthouse, where he had a view of the Dixie Mart parking lot about 150-200 yards away. Using binoculars, he saw a small silver SUV drive up to the north side of the Dixie Mart, which is where the CI was waiting. Hillen testified that he saw the CI go to the driver's door, talk for several seconds, and then make an exchange with the driver. The CI gave a prearranged visual signal that the transaction was complete.

Hillen testified that, after the transaction was completed with the driver, the passenger of the SUV exited and walked to the front of the store. Hillen used his radio to notify several nearby police officers that the transaction was complete, and he drove to the store. As Hillen drove across the store parking lot, he saw the passenger go inside the store. He then saw the passenger walk out of the store's front entrance and speak to a woman in the parking lot. Hillen, who was dressed in a tactical uniform with "police" across the front and wearing a gun and badge, yelled, "Stop, police!" to the man in the parking lot. Hillen

said the man looked toward the SUV, looked at Hillen, then ran to the SUV and jumped in the passenger side of the SUV.  Hillen yelled two or three times for the man to stop, and he was no more than five or six feet away.  He said it was impossible that the man did not hear him.

As another police car entered the parking lot, the SUV darted out onto Highway 3 and proceeded south at a high rate of speed.  Hillen asked another officer to secure the marijuana purchased by the CI, and Hillen joined the chase.  Several units pursued the SUV at speeds of well over 100 miles per hour all the way to I-220, where the SUV took the interstate toward Shreveport, exited at Highway 1, and proceeded north until it took a left onto Martin Luther King Drive.  All of this was done over the course of several miles at high speeds and in violation of several red lights, sometimes forcing cars off the road.  The SUV eventually stopped on a dead-end street.  The driver bolted but was later captured. The passenger, Petitioner, stayed in the passenger seat.  Officers testified that they yelled for Petitioner to exit the vehicle, but he sat there with his hands in his lap.  An officer eventually broke the passenger window with a baton, whereupon Petitioner "figured we were serious" and "got out on his own at this point."

Benton Chief of Police Charles Pilkinton testified that he drove into the Dixie Mart parking lot in time to see Assistant Chief Hillen pull his weapon, point it at the SUV, and back away as the SUV was coming toward him.  Pilkinton said he got a good look at the driver of the SUV, and it was not Petitioner.

Chief Pilkinton testified that he saw the SUV speed out of the parking lot, and he turned on his lights and siren and began pursuit.  He recalled going 111 miles per hour as

they passed the high school and 123 as they passed Kingston Road.  Just past that intersection, Pilkinton saw the passenger in the SUV throw out a large object that hit his windshield while he was going over 100 miles per hour.  Pilkinton said he realized what it was when he saw the "green blizzard" of marijuana.  He noted the location and requested officers to search the area.  An officer testified to finding the large bag of marijuana on the side of the road in that area.  It contained some smaller bags, as if packaged for sale.  A crime lab technician testified that the contents were marijuana.  The CI turned over to police three dime bags (worth $10 each) of a substance bought from the driver of the SUV.  The crime lab technician verified that it was marijuana.

Chief Pilkinton testified that the hand that he saw throw the bag from the passenger side of the car was light skinned.  He described Petitioner as light skinned, and the driver co-defendant as dark skinned.  The Benton officers testified that budget constraints did not allow video recording devices in their patrol cars.  A sheriff's deputy who joined the chase near I-220 did capture the chase from that point forward, and that video was played for the jury.  That part of the chase did not include the stretch of road where the bag of marijuana was thrown from the SUV.

Petitioner, who represented himself, called Franya Lawrence, who testified that she and her boyfriend pulled up to the Dixie Mart and saw Petitioner walking out of the store.  Ms. Lawrence recognized Petitioner from their days in high school.  She spoke to Assistant Chief Hillen, with whom she also attended high school, as she sat in her car, and she then saw Hillen tell Petitioner to stop.  Petitioner instead entered the passenger side of an SUV driven by another man, and they left.  Ms. Lawrence said that Hillen was yelling at

Petitioner to stop, and there was not any way that Petitioner did not hear Hillen. Lawrence said the SUV "drove off full speed off."

Quion Smith was the driver of the SUV. He testified as a defense witness but invoked his Fifth Amendment right against self-incrimination when cross-examined on his role in the drug transaction. Smith, who admitted to two prior felony convictions for damage to property and possession of cocaine, testified that he knew Petitioner "through the streets." Smith said that he told Petitioner's cousin that he was about to drive to Benton, and Petitioner asked for a ride. Petitioner did not say why he wanted a ride to Benton, and he did not know that Smith would stop at the Dixie Mart. Smith testified that Petitioner went inside the store to use the restroom and, during that time, Smith was talking to his "homegirl," the CI. Smith testified that Petitioner got out of the vehicle and entered the store as soon as they arrived, so he was inside the store before the CI approached the vehicle, and Petitioner had no idea what Smith and the CI discussed. Smith denied hearing Assistant Chief Hillen yelling for them to stop, and he said he never saw Petitioner throw anything from the passenger side of the SUV.

Latisha Granville testified that Quion Smith was her boyfriend. She was asked if Smith, at the time in question, owned a silver Hyundai SUV. Ms. Granville said that the vehicle was hers, and it was a four-door Kia Sportage. She was not present with Smith at the Dixie Mart, and she did not know if Petitioner was with him.

### B. State Court Decision; Habeas Burden

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).  The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).  And "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Petitioner was convicted under La. R.S. 40:966(A), which makes it unlawful for any person knowingly or intentionally to distribute or dispense or possess with intent to distribute or dispense a Schedule I controlled dangerous substance.  Under the Louisiana law of principals, La. R.S. 14:24, all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.  Petitioner first challenged the sufficiency of the evidence to support his conviction on this count in his post-conviction application.  Tr. 103-06.  The trial court characterized the argument as general and conclusory and denied it summarily.  Tr. 166. The appellate court denied a writ application "upon the showing made" without further discussion.  Tr. 206.  The Supreme Court of Louisiana denied a writ application without comment on this issue.  Tr. 226.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus, a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential <u>Jackson</u> standard. <u>Parker v. Matthews</u>, 132 S.Ct. 2148, 2152 (2012); <u>Harrell v. Cain</u>, 595 Fed. Appx. 439 (5th Cir. 2015).

### C. Analysis

The evidence was sufficient to withstand a habeas challenge to the marijuana distribution conviction. A police officer testified that Petitioner was inside the small SUV when the driver made the transaction with the CI. When a policeman ordered Petitioner to stop shortly afterward, Petitioner instead fled to the SUV, which departed and engaged officers in a miles-long chase. Another officer testified that he saw a light skinned hand throw a bag of marijuana out of the passenger side of the SUV.

A rational juror could find from that evidence that Petitioner was guilty of being a principal to distribution of marijuana by virtue of his participation in those events. More important for purposes of habeas review, the state court's rejection of this claim was not an unreasonable application of the <u>Jackson</u> standard to the facts before it. Some persons might reach a different conclusion upon applying the <u>Jackson</u> standard, but that is not sufficient to obtain habeas relief.

An unreasonable application of clearly established federal law, as required by Section 2254(d), means that "the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White v. Woodall, 134 S.Ct. 1697, 1702 (2014). Said another way, "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Woods v. Etherton, 136 S.Ct. 1149, 1151 (2016) (quoting Harrington v. Richter, 131 S.Ct. 770 (2011) ).

Under Louisiana law, a person's mere presence at the scene of a crime does not make him a principal to the crime. But a person is a principal who is at the scene ready to aid in its commission and is actually aware of his accomplice's intentions. Those rules apply to drug distribution offenses. State v. Williams, 199 So.3d 1205, 1215 (La. App. 5th Cir. 2015). A number of convictions have been upheld against the driver of a vehicle from which the passenger sold drugs to an informant. Williams, 199 So.3d at 1215. It is also "well settled that the driver of a getaway vehicle is a principal to the crime committed." Id. at 1215-16.

Petitioner was not the driver, but there is evidence that the drug transaction was made in his presence in a small area where he had to be aware of the crime. He then actively participated in fleeing the police just seconds after the transaction, and there is evidence that he aided the seller/driver by attempting to destroy evidence of the crime when he threw the bag of marijuana out the window. A Louisiana court has upheld a conviction for a defendant who was in a motel room where drugs were sold even though the defendant did not actually handle the drugs or actively participate in the transaction. He had knowledge of the distribution that happened just a few feet away, and there was evidence

that he and the seller were working together.  <u>State v. Carouthers</u>, 607 So.2d 1018, 1029-30 (La. App. 3d Cir. 1992), vacated on other grounds, 618 So.2d 880 (La. 1993).  Considering the applicable law and facts presented at trial, Petitioner has not met his burden of demonstrating that the state court's application of <u>Jackson</u> was not only wrong but objectively unreasonable.

**Right to Counsel**

Petitioner was indigent, so the court appointed attorney Walter Gerhardt to represent him.  Petitioner appeared in court several times accompanied by appointed counsel.  Petitioner apparently grew unhappy with his attorney after the attorney recommended Petitioner consider accepting a plea offer from the state.  Judge Jeff Cox granted Petitioner's request to represent himself, and he appointed Mr. Gerhardt to serve as standby counsel.  Petitioner conducted the trial and was convicted.

Petitioner complained in his post-conviction application that the judge did not, before granting Petitioner's request to represent himself, first obtain a knowing and intelligent waiver of his right to counsel.  The self-representation issue arose at a hearing on August 9, 2010, the transcript of which was recently filed in this record.  Doc. 16.  The hearing began with defense counsel alerting the court to the request for self-representation, and the relevant discussion is set forth below:

> Mr. Gerhardt: Your honor, during our last meeting when I spoke with him in jail he indicated to me, and I believe it's among the motions that he's filed pro se, that he wishes to represent himself in this matter.  So I'm just advising the Court of that at this time.

The Court:       All right.  Mr. Carter, is that what you wish to do?

Mr. Carter:      Yes, Sir.

The Court:       You understand that you have the right to do that, is that correct?

Mr. Carter:      Yes, sir.

The Court:       All right.  But you understand I'm gonna appoint the IDB Board to be your co-advisor.  You understand that?

Mr. Carter:      Yes, sir.

The Court:       All right.  You understand that distribution of marijuana carries 5 to 30 years, is that correct?

Mr. Carter:      Yes, sir.

The Court:       You understand that all of these other charges will add and can run consecutive to one another which could be a significant amount of time?

Mr. Carter:      Yes, sir.

The Court:       What grade did you graduate from?

Mr. Carter:      11.

The Court:       All right.  You're well able to read, write and understand the English language?

Mr. Carter:      Yes, sir.

The Court:       You understand that you will be held to the same standard as an attorney that you will be – that if you pick your own jury that you will be responsible for picking your own jury?

Mr. Carter:      Yes, sir.

The Court:       You understand that I will deny or grant your motions as any attorney and you understand that if you do represent yourself that I will hold you to those same standards?

Mr. Carter:       Yes, sir.

The Court:        All right, and that's how you wish to proceed?

Mr. Carter:       Yes, sir.

The Court:        All right. Mr. Gerhardt, the IDB Board is hereby relieved from representing Mr. Carter. But they are ordered to assist him only to be an advisor to him. And he is only to be advised upon him asking the question. That is you are not to do anything other than that, except to advise him. Mr. Carter, you're up for jury trial. Are you ready to proceed to jury trial?

Mr. Carter:       Yes, sir.

The Court:        All right. September 13th, Mr. –

Mr. Jacobs:       September 13th is fine with me, Judge, I didn't hear all of your colloquy with Mr. Carter but since he is representing himself I wanna make sure he understands the implications of the multiple offender bill. By my calculations and just by my calculations and looking at his rap sheet if he is convicted to any felony or any nature he is looking at natural life.

The Court:        All right.

Mr. Jacobs:       If the State does choose multi bill, and I wanna put it on the record. I know we have done it before when it comes up on appeal, which it will, we are – if he is convicted of any felony we do plan to multi bill Mr. Carter for his natural life.

The Court:        All right. Mr. Carter, you understand that, is that correct?

Mr. Carter:       Yes, sir.

The Court:        All right. Then your trial will be September 13th, unless this trial for some reason pleads out and then you'll be today. So, All right. He is present. He is allowed to represent himself but Mr. Gerhardt will be available for any questions that he may have.

Mr. Gerhardt:   Yes, Your Honor.

The case went to trial a few weeks later on September 13, 2010.  The court began

by explaining to Petitioner the plan for the proceedings, and he explained to Petitioner that

he would have the right but not an obligation to make an opening statement.  The court

gave opening jury instructions, allowed the opening statements, and then excused the jury

to take up a motion to suppress.  Tr. 257.  The court began the hearing by ensuring that he

properly understood Petitioner's rationale in his motion to suppress, and the court placed

the hearing witnesses under the rule of sequestration "just to protect the integrity of the

trial and to do this on behalf of Mr. Carter."  Tr. 275-76.

At the end of the suppression hearing, and before the actual trial began, Petitioner

inquired about some witness subpoenas.  The judge explained that the deputies had been

unable to serve some of the witnesses.  He also reminded Petitioner that, "I told you you

would be held to the same standard as an attorney."  Tr. 298-99.  He also explained that

the court and standby counsel could only do so much:

> But you're acting as your own attorney.  I let you act as your own attorney
> because you wanted to fire the Public Defender's Office.  You said you
> wanted to act as your own attorney.  **I gave you all the dangers of acting as
> your own attorney.**  I told you that you would be held to the same standard.
> I told you the dangers of trying this case on your own and what the exposure
> was that you had in this case.  **I went through a litany on several different
> occasions with you -- of all the dangers of this.**  Mr. Carter, I'm sorry.
> You're acting as your own attorney.

Tr. 299-300 (Emphasis added).  The record submitted by the State does not appear

to include transcripts of any of the "several different occasions" the judge mentioned, but

the record did not include the transcript of the August 9, 2010 hearing on this issue until

this court ordered it be transcribed and filed. Judge Cox then ruled on the motion to suppress and asked whether Petitioner was ready to proceed. Petitioner answered, "Yes, sir, Your Honor." Tr. 302-03.

Petitioner did not raise the self-representation issue on direct appeal. He waited until his post-conviction application to argue that the record did not show an express statement from him that he wished to waive his right to counsel or adequate warnings from the trial court of the risks and disadvantages of self-representation. Tr. 107-11.

Judge Cox also ruled on the post-conviction application. At the time he ruled, there was no transcript of the August 9, 2010 hearing available. (The transcript was prepared after this court ordered it.) Judge Cox addressed this claim as follows:

> [A]fter a review of the audio file from August 9, 2010, the date on which Petitioner was granted his request to represent himself, it is clear that Petitioner waived his right to further representation knowingly and voluntarily. Furthermore, it was Petitioner's own motion that prompted such a request to be granted. The Court notes that the Public Defender was ordered to continue to advise Petitioner throughout trial, if necessary, and the District Attorney entered additional colloquy regarding their pursuit of a multibill sentence, should Petitioner be found guilty at trial. Petitioner again knowingly and voluntarily waived his right to counsel at that time.

Tr. 166-67.[1]    Petitioner sought a writ from the state appellate court, which ruled, "Upon the showing made, the writ is denied." Tr. 206. The Supreme Court of Louisiana denied a writ application (that presented this and several other issues; Tr. 207-13) in a per curiam opinion, over three dissents that would have granted the writ. The opinion did not

---

[1] The State has not cited to the motion mentioned by Mr. Gerhardt and Judge Cox in which Petitioner allegedly asked for self-representation, and the undersigned has not seen it in the record. If it exists, the State would be wise to file a copy.

specifically address this claim, although it stated that Petitioner chose to represent himself so could not claim the quality of that self-representation was inadequate.  Tr. 227.

A defendant in a state criminal trial has a right to counsel, but he also has a constitutional right to self-representation.  Faretta v. California, 95 S.Ct. 2525 (1975). When a defendant wishes to represent himself, he must knowingly and intelligently waive his right to counsel.  Id. at 2541.  "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  Id. (internal quotation marks omitted).  The type of warnings that are required depend on the nature of the proceedings.  For trial, warnings of the pitfalls of proceeding without counsel must be rigorously conveyed.  Iowa v. Tovar, 124 S.Ct. 1379, 1388 (2004), citing Patterson v. Illinois, 108 S.Ct. 2389 (1988).

The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." Tovar, 124 S.Ct. at 1387. The information the defendant must possess to make an intelligent election will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.  Id. Petitioner bears the burden of proving that his waiver of counsel was ineffective.  "[I]n a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." Tovar, 124 S.Ct. at 1390; Landry v. Cain, 445 Fed. Appx. 817, 823 (5th Cir. 2011).

The state court adjudicated this claim on the merits, as opposed to any procedural grounds.  Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts.  Pape v. Thaler, 645 F.3d 281, 287 (5th Cir. 2011).  A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable.  Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).  When a state court has denied a claim on the merits, the AEDPA bars habeas relief unless the prisoner shows that the state court "erred so transparently that no fairminded jurist could agree with that court's decision."  Bobby v. Dixon, 132 S.Ct. 26, 27 (2011) (per curiam).

Guidance can be found in two recent decisions from the Fifth Circuit regarding similar claims.  The defendant in Gross v. Cooper, 312 Fed. Appx. 671 (5th Cir. 2009) rejected representation and agreed to self-representation in two drug distribution trials.  The trial judge assured that the waiver was voluntary but did not consider any background

factors, such as age, education, and experience, or engage in any dialogue to ascertain the defendant's awareness of the consequences or practical meaning of waiving representation. The Fifth Circuit stated that the case would clearly warrant relief on direct review, but it was a "much closer case given our deference to state courts under AEDPA." Nevertheless, considering the almost complete lack of warnings about the dangers of self-representation or evaluation of the defendant's background, the Fifth Circuit reversed the district court and remanded with instructions to allow a new trial.

The second case is Landry v. Cain, 445 Fed. Appx. 817 (5th Cir. 2011), in which the district court granted habeas relief but the Fifth Circuit reversed. The defendant in Landry notified the court midway through trial that he wished to take over his own defense. The trial judge addressed him and advised that the procedures in the courtroom were better dealt with by attorneys than a layperson. The judge explained the procedures the defendant would have to comply with while representing himself and, on several occasions, confirmed that the defendant intended to represent himself. The judge stated that the self-representation was against his advice, and he highly suggested that the defendant consult standby counsel.

Mr. Landry first raised his denial of right to counsel claim in his post-conviction application, which the state court denied on procedural grounds. Neither the state nor federal district court raised a procedural default bar to federal habeas relief, so the Fifth Circuit also elected to address the claim on the merits. The absence of a state court adjudication on the merits, however, meant that the Fifth Circuit reviewed the claim *de novo* rather than through the deferential standards of Section 2254(d). The Court

emphasized that the petitioner had the burden of proving that his waiver was ineffective and that no particular formula or script is mandated by law.  Rather, the totality of the circumstances must be considered.  The Fifth Circuit found that the inquiry in <u>Landry</u> was adequate, so the petition for habeas relief was denied.

The judge in this case conducted a more extensive colloquy then the one seen in <u>Gross</u>, and it is more akin to that seen in <u>Landry</u>.  Judge Cox asked Petitioner about his education and literacy.  He described the nature of the charge, and he warned Petitioner that he would be held to the same standard as an attorney, would have to handle the jury selection process, and would have to handle motions on his own.  He warned Petitioner of the sentencing exposure he faced if convicted.  And there is a statement by the judge, though not supported by citation to the record filed with this court, that he "went through a litany on several different occasions with you -- of all the dangers of this" self-representation.

A more detailed set of warnings may have been preferable.  But given the factual findings made by the state court that the waiver of counsel was knowing and intelligent, and the deference required by Section 2254(d), habeas relief is not warranted on this claim. <u>Woods v. Donald</u>, 135 S.Ct. 1372, 1376 (2015) ("AEDPA's standard is intentionally difficult to meet").  Petitioner has not met his burden of demonstrating that his waiver was invalid or that the state court's decision was an objectively unreasonable application of <u>Faretta</u> or any other clearly established holding of the Supreme Court.  Petitioner cites state court decisions that he argues support his claim, but it is only the holdings of Supreme Court decisions that form clearly established federal law for purposes of Section 2254(d).

Decisions from federal circuit courts do not fill the bill. "Nor, of course, do state-court decisions, treatises, or law review articles." Kernan v. Cuero, 138 S.Ct. 4, 9 (2017).

**Prosecutor Misconduct**

Petitioner argued in his post-conviction application that he is entitled to a new trial because the prosecutor knowingly used false testimony from Assistant Chief Hillen. Petitioner points to the alleged inconsistencies between Hillen's testimony and statements in a police report and an arrest warrant affidavit. The distinctions are fairly minor.

Hillen wrote in the report and affidavit that he overheard the CI on the phone "asking a subject to meet her at Dixie Mart with the drugs." When Hillen testified, he talked about the CI calling or dealing with "individuals" (plural) to set up the drug buy. Hillen also testified that he saw two individuals in the SUV during the transaction and saw Petitioner exit the vehicle after the transaction. The report and affidavit do not specifically describe the passenger getting out of the vehicle, but that is understandable given that both of those documents were directed at the crimes committed by Quion Smith, the driver.

"The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction." Kinsel v. Cain, 647 F.3d 265, 271 (5th Cir. 2011) (citing Napue v. Illinois, 79 S.Ct. 1173 (1959). To establish a denial of due process through the use of perjured testimony, a petitioner must show "that (1) the witness gave false testimony; (2) the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false." Reed v. Quarterman, 504 F.3d 465, 473 (5th Cir. 2007).

The State trial court summarily denied this claim with an observation that the appellate court had fully examined Hillen's testimony on direct appeal. The appellate court did review Hillen's testimony, but it did not assess a <u>Napue</u> claim. In any event, Section 2254(d) "compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning." <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193–94 (5th Cir. 2001). <u>See also</u> <u>Higgins v. Cain</u>, 720 F.3d 255, 261 (5th Cir. 2013), citing <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002) (en banc).

The record does not support Petitioner's contention that Hillen gave false testimony. Petitioner has simply found minor variances between the oral testimony and written documents. A reasonable comparison of the two shows no more variation than would ordinarily be expected, and no sign of material false testimony. The state court's denial of this claim was not an objectively unreasonable application of <u>Napue</u>.

**Disclosure of CI**

Petitioner argues he was denied a fair trial because the State did not disclose the identity of the CI so that she could be subpoenaed to trial. The prosecution has an informer's privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. <u>Roviaro v. U.S.</u>, 77 S.Ct. 623 (1957). The privilege is not absolute, and the identity of the CI may have to be disclosed if a balancing of the public interest in protecting the flow of information against the individual's right to prepare his defense weighs in favor of disclosure. <u>Id</u>. <u>See</u> <u>U.S. v. Ortega</u>, 854 F.3d 818, 824 (5th Cir. 2017); <u>State v. Lewis</u>, 188 So.3d 1040 (La. 2016).

Petitioner made a related argument on direct appeal that his right to a fair trial was violated by the trial court's failure to issue a subpoena to the CI. The record shows that Petitioner made requests for subpoenas to be issued to the informant, who he identified by descriptions such as "the drug buy female SI" and the like. The appellate court noted that "[t]he record shows that the defendant did not file any pretrial motions to obtain the disclosure of the informant's identity." State v. Carter, 78 So.3d at 172. When Petitioner argued in his post-conviction application that the State failed to identify the CI, the claim he presents here, the trial court denied it with an observation that the appellate court had held that Petitioner never requested disclosure of the CI's identity prior to trial. Tr. 184-85.

Petitioner has not cited any clearly established federal law from the Supreme Court that requires *sua sponte* disclosure of a CI's identity. It appears that a request is required to preserve this issue for appeal or habeas purposes. Petitioner did not make such a request, so the state court's rejection of this claim was not an unreasonable application of Roviaro or other relevant precedent.

**Ineffective Assistance of Appellate Counsel**

Petitioner argued in his post-conviction application that appellate counsel was ineffective for not making an argument on direct appeal that the evidence was insufficient to support the conviction for distribution of marijuana. The trial court denied the claim, stating that the issue of sufficiency of the evidence had been raised and litigated on direct appeal. Tr. 185. That was not quite correct. The only challenge to sufficiency of the evidence on appeal related to the flight from an officer conviction.

Petitioner pursued this ineffective assistance claim to the Supreme Court of Louisiana, which denied his writ application in a per curiam opinion that stated that Petitioner "fails to show appellate counsel provided ineffective assistance by failing to present claims that were clearly stronger than those presented and that there was a reasonable probability the ignored claims would have prevailed on appeal."  Tr. 227. Three justices, however, voted to grant the writ, and one of the three stated that he would grant and remand for a hearing on the claim of ineffective assistance of appellate counsel. Tr. 227-31.

Effective assistance of appellate counsel does not require counsel to raise every non-frivolous ground of appeal available.  It requires only that counsel perform in a reasonably effective manner.  Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998), citing Evitts v. Lucey, 105 S.Ct. 830 (1985).  A petitioner who asserts a claim of ineffective assistance of appellate counsel must establish both deficient performance and prejudice to prevail on the claim.  Dorsey v. Stephens, 720 F.3d 309, 319 (5th Cir. 2013).

When counsel filed a merits brief but the petitioner argues that counsel should have included another issue, counsel was not deficient unless the petitioner shows that a particular non-frivolous issue was clearly stronger than the issues counsel did present. Dorsey, 720 F.3d at 320, citing Smith v. Robbins, 120 S.Ct. 746, 765-66 (2000).  There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than neglect.  Dorsey, 720 F.3d at 320.  To show prejudice, the petitioner must demonstrate that had the additional issue been raised there was a reasonable probability that he would have prevailed on appeal.  Id., citing Robbins, 120 S.Ct. at 764.

The standard set forth above is the petitioner's burden when in state court.  Once the state court has ruled on the merits of that claim, the burden in a federal habeas proceeding is to show that the state court's decision was an objectively unreasonable application of <u>Robbins</u> or other applicable Supreme Court decision.  <u>Vollmer v. Davis</u>, 673 Fed. Appx. 406, 414 (5th Cir. 2016) (applying the "doubly deferential" standard of review to an ineffective assistance of appellate counsel claim); <u>Dorsey</u>, 720 F.3d at 319.

It is debatable among reasonable jurists whether the ineffective assistance claim had potential merit when presented in the post-conviction application.  If there is any reasonable argument that counsel's efforts satisfied the deferential standard of <u>Robbins</u>, habeas relief is not available.  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 788 (2011).  There were grounds for a reasonable argument on appeal that the evidence was insufficient with respect to the distribution conviction, but it is debatable whether the claim would have had merit.  A number of Louisiana cases, cited above, have affirmed convictions in somewhat similar circumstances, and Petitioner has not cited any decisions that have vacated convictions in circumstances like his.  Accordingly, there is a reasonable argument that appellate counsel satisfied the <u>Robbins</u> standard.  This means that the state court's rejection of this claim was not an unreasonable application of clearly established federal law. Habeas relief is not permitted on this final claim.

Accordingly,

It is recommended that Petitioner's Petition for Writ of Habeas Corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of November, 2018.

Mark L. Hornsby
U.S. Magistrate Judge